**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION**

DONNA M. FORD                                                                                           PLAINTIFF

v.                                          NO 4:06cv00770 SWW-JWC

MICHAEL J. ASTRUE,
Commissioner, Social
Security Administration[1]                                                                      DEFENDANT

**PROPOSED FINDINGS AND RECOMMENDED DISPOSITION**

**INSTRUCTIONS**

This recommended disposition has been submitted to United States District Judge Susan Webber Wright.  The parties may file specific objections to these findings and recommendations and must provide the factual or legal basis for each objection.  The objections must be filed with the Clerk no later than eleven (11) days from the date of the findings and recommendations.  A copy must be served on the opposing party.  The District Judge, even in the absence of objections, may reject these proposed findings and recommendations in whole or in part.

**RECOMMENDED DISPOSITION**

Plaintiff, Donna M. Ford, has appealed the final decision of the Commissioner of the Social Security Administration to deny her claim for Supplemental Security Income (SSI), based on disability.  Both parties have submitted appeal briefs and the case is ready for decision.

The Court's function on review is to determine whether the Commissioner's decision is supported by substantial evidence on the record as a whole and free of legal error.  Long

---

[1] Michael J. Astrue was sworn in as the Commissioner of Social Security on February 12, 2007. He is therefore substituted for Jo Anne B. Barnhart pursuant to Fed.R.Civ.P. 25(d)(1).

v. Chater, 108 F.3d 185, 187 (8th Cir. 1997); see also, 42 U.S.C. § 405(g). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Richardson v. Perales, 402 U.S. 389, 401 (1971); Reynolds v. Chater, 82 F.3d 254, 257 (8th Cir. 1996).

In assessing the substantiality of the evidence, the Court must consider evidence that detracts from the Commissioner's decision as well as evidence that supports it; the Court may not, however, reverse the Commissioner's decision merely because substantial evidence would have supported an opposite decision. Sultan v. Barnhart, 368 F.3d 857, 863 (8th Cir. 2004); Woolf v. Shalala, 3 F.3d 1210, 1213 (8th Cir. 1993).

"Disability" is the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). A "physical or mental impairment" is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3).

Plaintiff alleged an inability to work due to depression, low back problems, shortness of breath and hip problems. (Tr. 25.) The Commissioner found that she was not disabled within the meaning of the Social Security Act. The only issue before this Court is whether the Commissioner's decision that Plaintiff was not disabled within the meaning of the Act is supported by substantial record evidence.

After conducting an administrative hearing, the Administrative Law Judge[2] (ALJ) concluded that Plaintiff had not been under a disability within the meaning of the Social Security Act at any time through March 31, 2006, the date of his decision. (Tr. 19.) On May 26, 2006, the Appeals Council denied Plaintiff's request for a review of the ALJ's

---

[2]The Hon. Edward M. Starr.

decision, making the ALJ's decision the final decision of the Commissioner. (Tr. 3-5.) Plaintiff then filed her complaint initiating this appeal (docket entry #3).

After consideration of the record as a whole, the Court finds that the decision of the Commissioner is supported by substantial evidence.

Plaintiff was 48 years old at the time of the hearing. (Tr. 228, 234.) She completed the seventh or eighth grade in school.[3] (Tr. 73, 211, 234, 184, 196.) She has past relevant work as a poultry line worker and a production worker. (Tr. 54-58, 234-36, 251.)

The ALJ considered Plaintiff's impairments by way of the required five-step sequential evaluation process. 20 C.F.R. § 416.920(a)(4) (2005). The ALJ found that Plaintiff had not engaged in substantial gainful activity at any time relevant to her claim. (Tr. 14.) He found that she had "severe" impairments, depression and a disorder of the back, but that she did not have an impairment or combination of impairments that met or equaled a Listing. Id. He judged that Plaintiff's statements regarding the intensity, duration and limiting effects of her symptoms were not entirely credible. (Tr. 16.)

The ALJ found that Plaintiff retained the residual functional capacity for light work with additional mental restrictions. (Tr. 14.)

> From a mental standpoint, she can understand, remember, and carry out simple instructions but would have difficulty with detailed instructions. She has some limitations with attention and concentration, pace and persistence, and the ability to relate appropriately to supervisors. She is able to perform work where interpersonal contact is incidental to the work performed. She can perform tasks that are learned by rote with few variables and little judgment required. She can work under supervision that is simple, direct, and concrete.

Id.

He found that Plaintiff's past relevant work as a line worker in a poultry processing plant did not require the performance of work-related activities precluded by her limitations, and that her impairments did not prevent her performing that past relevant work. (Tr. 18.)

---

[3]It makes little difference; either would qualify as a "limited" education. 20 C.F.R. § 416.964(b)(3) (2005).

Consequently, the ALJ concluded that Plaintiff was not disabled.  Id.

Plaintiff contends that the ALJ erred by failing to find that her anxiety, paranoid personality, agoraphobia and psychotic disorder (rule out)[4] were "severe" impairments. (Br. 16-18.)  Plaintiff places undue emphasis on the distinction between impairments that are "severe" and those that are not.  Once a claimant gets past the Step 2 threshold of having any "severe" impairment, the ALJ considers all impairments, including those that are less than "severe," in determining the claimant's residual functional capacity.  20 C.F.R. § 416.945(e) (2005); Social Security Ruling 96-8p, at 5.  The ALJ did so in this case.

Plaintiff also contends that the ALJ failed to consider her impairments in combination.  (Br. 18.)  The ALJ discussed Plaintiff's impairments individually (Tr. 14, 15, 16, 17, 18) and in combination (Tr. 14).  Furthermore, the ALJ discussed Plaintiff's limitations of function, which are a cumulation of her impairments, at some length.  (Tr. 14, 15, 16, 17, 18, 19.)  He considered the complete medical record.  (Tr. 12.)  He considered the entire record.  (Tr. 14.)  He considered all symptoms.  (Tr. 15.)  He carefully considered all pertinent evidence in the record as a whole.  (Tr. 17.)  Plaintiff's point lacks merit.  See Hajek v. Shalala, 30 F.3d 89, 92 (8th Cir. 1994); Browning v. Sullivan, 958 F.2d 817, 821 (8th Cir. 1992).

Next, Plaintiff argues that the ALJ erred in his evaluation of her chronic obstructive pulmonary disease, and should have found that it was a "severe" impairment. (Br. 18-20.)  Again, once a claimant gets past the Step 2 threshold of having a "severe" impairment, the ALJ considers all impairments, including those that are less than "severe," in determining

---

[4]There is only one reference to "rule out psychotic disorder, not otherwise specified." (Tr. 215.) On October 20, 2005, well over two years since her last appointment at Counseling Associates, Inc., and less than three weeks before the administrative hearing, Plaintiff presented at Counseling Associates, Inc., for an adult diagnostic assessment.  (Tr. 210-15.)  It is unclear who made the "diagnosis" of "rule out psychotic disorder."  The form is signed by the clinician, a UCA student, her supervisor, a Ph.D. (the next day) and by Richard Sundermann, M.D., at an unspecified date.  (Tr. 215.)  When Plaintiff was seen again, one week later, there is no mention of a psychotic disorder, although no diagnosis was made.  (Tr. 206-09.)

4

the claimant's residual functional capacity. 20 C.F.R. § 416.945(e) (2005); Social Security Ruling 96-8p, at 5.

On May 2, 2005, Plaintiff was evaluated by Dennis W. Berner, M.D. (Tr. 219-20.) She complained of back pain from an on-the-job injury five years before, but also complained of shortness of breath with exertion. (Tr. 219.) He noted that she was a fairly heavy cigarette smoker, but that she was not having excessive cough, not bringing up phlegm, not having chest discomfort or hemoptysis.[5] Id. Her lungs sounded clear bilaterally. (Tr. 220.) X-rays revealed the lungs were clear and no abnormality was evident. (Tr. 218.) Plaintiff was to return to Dr. Berner. (Tr. 220.) There is no evidence in the record that she did, although she did go for tests that he ordered. (Tr. 221-22, 226-27.[6])

Plaintiff was inconsistent in her statements about her respiratory condition. In September of 2004, she was observed smoking outside of a psychologist's office:

> She was smoking outside the office; and when asked if she had any difficulties from the smoking, she said "not that I know of." However[,] later in the session, she stated that one of her major problems is "it's hard to breathe. I can't hardly walk to the mailbox without being, you know, like constant out of breath."

(Tr. 114.)

The ALJ's finding that Plaintiff's chronic obstructive pulmonary disease was not a "severe" impairment was not error.

Next, Plaintiff contends that the ALJ erred in assessing her mental residual functional capacity. (Br. 20-24.) As noted earlier, the ALJ found the following restrictions in his residual functional capacity determination:

> From a mental standpoint, she can understand, remember, and carry out simple instructions but would have difficulty with detailed instructions. She

---

[5]Spitting of blood derived from the lungs or bronchial tubes as a result of pulmonary or bronchial hemorrhage. PDR Medical Dictionary 805 (2d ed. 2000).

[6]There is some minor duplication of the record.

> has some limitations with attention and concentration, pace and persistence, and the ability to relate appropriately to supervisors. She is able to perform work where interpersonal contact is incidental to the work performed. She can perform tasks that are learned by rote with few variables and little judgment required. She can work under supervision that is simple, direct, and concrete.

(Tr. 14.)

Plaintiff did not specify what additional restrictions should have been placed on her mental residual functional capacity, but generally expressed the position that she could not work. (Br. 20-24.) She concedes that her mental health treatment was sporadic. (Br. 23.)

Plaintiff's application for SSI was filed August 9, 2004. SSI benefits are not payable for a period prior to the application. Cruse v. Bowen, 867 F.2d 1183, 1185 (8th Cir. 1989). An applicant must be disabled during the pendency of his or her application. Turley v. Sullivan, 939 F.2d 524, 527 (8th Cir. 1991). On February 7, 2003, Plaintiff made initial contact with Counseling Associates, Inc. (Tr. 199.) She reported depression. (Tr. 197.) She had not been seen by a psychologist or counselor previously. (Tr. 196.) On February 19, 2003, she was referred to Ron Boyle, M.D., psychiatrist, because of severe depression/anxiety and thoughts of suicide. (Tr. 185.) She had been seen that day by Sandy Wood, R.N.P., at the behest of her primary therapist. (Tr. 188-89.) Plaintiff denied any current medical problems. (Tr. 188.) Her current stressful situation had begun two months before when her husband was jailed for manufacturing methamphetamine. Id. Her electricity had been turned off. Id. Dr. Boyle issued a verbal order that she could start Paxil. Id. Two days later, Plaintiff saw Nurse Practitioner Wood again. (Tr. 187.) The Paxil was making her sleepy and slightly nauseous. Id. Plaintiff had learned that her husband was facing ten years to life in prison if convicted; she was distraught. Id. Three days later she stopped by to report that she was starting to feel better, with decreased nausea, hopelessness, anxiety and suicidal ideation. (Tr. 186.)

On March 3, 2003, Plaintiff saw Dr. Boyle with a chief complaint of depression. (Tr. 183-84.) She revealed that her youngest daughter had attempted suicide in October

2002; she had lost two children to crib death. (Tr. 183.) She was less tearful, but still depressed; he increased her Paxil. (Tr. 184.) She was seen March 5, 2003; her dog had died. (Tr. 182.) On March 18, she called to report that she was out of medication; samples had been provided for her five days before, but she had not picked them up. (Tr. 181.) The following day, she saw Nurse Wood again:

> [S]he has been out of medications for about a week. During that time, she has experienced some degree of discontinuation syndrome and an increase in her anxiety and panic attacks. She directly relates that to being out of the medication. She denies that when she takes the medication she's having any side effects from it and can tell that her depression is significantly improved. She denies suicidal or homicidal ideation. She has adaptive plans for the future. She has applied for a job in town and has considerable amount of hope regarding her husband's release from jail. She has a safe place to stay and took a positive step in turning herself in. There had been a warrant for her arrest due to a traffic violation. She did turn herself in and had all penalties removed, other than having to pay the fine of $500. She states she has to find a job first, but can make payments on that once she is employed. This is a much more adaptive outlook for her.

(Tr. 179.) She was to begin taking her Paxil again. Id.

On April 30, 2003, she saw Dr. Boyle again. (Tr. 178.) She had been taking Paxil, but expressed depression, perhaps more anxiety than depression; she was "definitely better." Id. He again increased her Paxil, to 37.5 mg. Id. On May 21, 2003, she saw Nurse Wood. (Tr. 177.) (She cancelled one appointment because of a daughter's illness. Id.) She reported that she was better on the increased dose of Paxil with regard to crying and depressive symptoms, but at times had racing thoughts and trouble sleeping. Id. Her affect was bright. Id. She reported that she had heard voices as on a radio for some time, in addition to conversations in her head; Nurse Wood thought these were intrusive thoughts rather than auditory hallucinations. Id. Dr. Boyle added Seroquel 25 mg,[7] one at bedtime. Id.

Plaintiff saw Nurse Wood again June 11, 2003:

---

[7]Seroquel is indicated for the treatment of schizophrenia. Physicians' Desk Reference 682 (57th ed. 2003).

7

> She comes in today telling me she has responded well to the Seroquel. She is sleeping better, is calmer, her thoughts are not racing as much. Additionally, she is more forthcoming with the nature of the symptoms that she began reporting at last visit. Today, she overtly tells me that she has been hearing voices, external, that sound much like a radio. However, since being on the Seroquel they have decreased in both intensity and frequency. She states that she feels calmer and has handled some traumas in her life much better in the past week-and-a-half or two weeks. She denies any side effects from the medication, other than sleepiness at bedtime, which she has used as a benefit. Her husband has been sent to prison, and she has had a death, a murder, of a close family friend. She has been able to handle both of these events appropriately. She is tearful and sad, but is able to grieve appropriately and without feeling overwhelmed.
>
> I did talk to her today about continuing in the therapeutic process. . . . . I'm not sure that she will be forthcoming and reschedule with the therapist, but she does understand the benefits and was encouraged to do so.

(Tr. 176.) Dr. Boyle increased her Seroquel to 50 or 75 mg at bedtime. Id. She was rescheduled for one month. Id.

There is a note dated September 17, 2003, indicating that Plaintiff wanted medications only, but did not want therapy. (Tr. 172.) A 90 Day Review dated October 28, 2003, indicated that Plaintiff received medication services only. (Tr. 171.) It noted her paranoid features hindered her participation in services. Id. The form is signed by Mark Coffman, L.A.C. Id. From the medical evidence, it does not appear that Mr. Coffman ever had a treatment relationship with Plaintiff. On the bottom of that same form, Coffman indicated on January 12, 2004, that there had been no client contact since June 11, 2003. Id. If there was no response to a letter, her chart would be closed. Id. There was no response to the letter; her discharge summary is dated January 26, 2004. (Tr. 170.) On October 20, 2005, less than three weeks before the hearing, Plaintiff again presented to Counseling Associates. (Tr. 210-15.) She complained of panic attacks. (Tr. 210.) On October 27, 2005, Plaintiff attended therapy; there is no indication that she had been prescribed medication. (Tr. 206.) There is also no evidence that she continued therapy beyond October 27, 2005.

A fair summary of the evidence from her treating mental health personnel is that,

with medications and therapy, Plaintiff's depression and anxiety were much improved to the point that she could work and handle stress appropriately. The ALJ's mental residual functional capacity is supported by substantial evidence. In addition, Plaintiff's argument seeks to place the burden of proof on the Commissioner. It is the claimant's burden, and not the Social Security Commissioner's burden, to prove the claimant's residual functional capacity.  Eichelberger v. Barnhart, 390 F.3d 584, 591 (8th Cir. 2004); Masterson v. Barnhart, 383 F.3d 731, 737 (8th Cir. 2004); Baldwin v. Barnhart, 349 F.3d 549, 556 (8th Cir. 2003);  Pearsall v. Massanari, 274 F.3d 1211, 1217 (8th Cir. 2001); Young v. Apfel, 221 F.3d 1065, 1069 n.5 (8th Cir. 2000); Anderson v. Shalala, 51 F.3d 777, 779 (8th Cir. 1995).  Plaintiff did not meet her burden.

Finally, Plaintiff urges that substantial evidence does not support the ALJ's credibility determination. (Br. 24-28.)  The ALJ evaluated Plaintiff's subjective complaints in light of the factors of Polaski v. Heckler,[8] 739 F.2d 1320 (8th Cir. 1984).  (Tr. 15-18.)

> Factors relevant to your symptoms, such as pain, which we will consider include:
> (i) Your daily activities;
> (ii) The location, duration, frequency, and intensity of your pain or other symptoms;
> (iii) Precipitating and aggravating factors;
> (iv) The type, dosage, effectiveness, and side effects of any medication you take or have taken to alleviate your pain or other symptoms;
> (v) Treatment, other than medication, you receive or have received for relief of your pain or other symptoms;
> (vi) Any measures you use or have used to relieve your pain or other symptoms (e.g., lying flat on your back, standing for 15 to 20 minutes every hour, sleeping on a board, etc.); and
> (vii) Other factors concerning your functional limitations and restrictions due to pain or other symptoms.

20 C.F.R. § 416.929(c)(3) (2005).

There is little objective support in the record for Plaintiff's claim of disability.  No evaluations showed medical conditions that were disabling.  Furthermore, inconsistencies

---

[8] The ALJ actually cited Social Security Ruling 96-7p and 20 C.F.R. § 416.929.  (Tr. 15.) That Ruling tracks Polaski and 20 C.F.R. § 416.929(c)(3) and elaborates on them.

9

between the medical evidence and Plaintiff's subjective complaints gave reason to discount those complaints. Richmond v. Shalala, 23 F.3d 1141, 1443 (8th Cir. 1994).

Given the inconsistencies in Plaintiff's statements, the lack of medical evidence in support of Plaintiff's allegations, the effectiveness of medications when taken as prescribed, the lack of regular treatment for her physical ailments, her poor work record, her functional capabilities and the lack of restriction placed on Plaintiff by her physicians, the ALJ could rightly discount Plaintiff's subjective complaints. See, e.g., Guilliams v. Barnhart, 393 F.3d 798, 801 (8th Cir. 2005) (ALJ may discount subjective complaints if there are inconsistencies in the record as a whole); Dunahoo v. Apfel, 241 F.3d 1033, 1038 (8th Cir. 2001) (ALJ may discount complaints inconsistent with the evidence as a whole); Dodson v. Chater, 101 F.3d 533, 534 (8th Cir. 1996) (after full consideration of all evidence relating to subjective complaints, ALJ may discount complaints if there are inconsistencies in evidence as a whole).

Plaintiff discontinued medications and therapy that had successfully controlled her symptoms. The ALJ noted her lack of compliance and his resulting suspicion that her symptoms may not have been as serious as alleged. (Tr. 16.) A failure to follow prescribed treatment weighs against a claimant's credibility. E.g., Guilliams v. Barnhart, 393 F.3d at 802; Eichelberger v. Barnhart, 390 F.3d at 590; O'Donnell v. Barnhart, 318 F.3d 811, 819 (8th Cir. 2003); Gray v. Apfel, 192 F.3d 799, 801 (8th Cir. 1999).

Despite her complaints of chronic obstructive pulmonary disease, Plaintiff continued to smoke. See Kisling v. Chater, 105 F.3d 1255, 1257 (8th Cir. 1997) (impairments that are controllable or amenable to treatment, including certain respiratory problems, do not support a finding of disability, and failure to follow a prescribed course of remedial treatment, including the cessation of smoking, without good reason is grounds for denying an application for benefits).

The ALJ's credibility analysis was proper. He made express credibility findings and

gave his reasons for discrediting Plaintiff's subjective complaints. E.g., Shelton v. Chater, 87 F.3d 992, 995 (8th Cir. 1996); Reynolds v. Chater, 82 F.3d 254, 258 (8th Cir. 1996); Hall v. Chater, 62 F.3d 220, 224 (8th Cir. 1995). His credibility findings are entitled to deference as long as they are supported by good reasons and substantial evidence. Gregg v. Barnhart, 354 F.3d 710, 714 (8th Cir. 2003).

It is not the task of this Court to review the evidence and make an independent decision. Neither is it to reverse the decision of the ALJ because there is evidence in the record which contradicts his findings. The test is whether there is substantial evidence on the record as a whole which supports the decision of the ALJ. E.g., Mapes v. Chater, 82 F.3d 259, 262 (8th Cir. 1996); Pratt v. Sullivan, 956 F.2d 830, 833 (8th Cir. 1992).

The Court has reviewed the entire record, including the briefs, the ALJ's decision, the transcript of the hearing and the medical and other evidence. There is ample evidence on the record as a whole that "a reasonable mind might accept as adequate to support [the] conclusion" of the ALJ in this case. Richardson v. Perales, 402 U.S. at 401; see also Reutter ex rel. Reutter v. Barnhart, 372 F.3d 946, 950 (8th Cir. 2004). The Commissioner's decision is not based on legal error.

IT IS THEREFORE RECOMMENDED that the final determination of the Commissioner be affirmed and that Plaintiff's complaint be dismissed with prejudice.

DATED this 14th day of January, 2008.

_____
UNITED STATES MAGISTRATE JUDGE